Sarah Shapero (Bar No. 281748)
Stephanie Silverman Warden (Bar No. 317711)
SHAPERO LAW FIRM
100 Pine St., Ste. 530
San Francisco, California 94111
Telephone:   (415) 273-3504
Facsimile:   (415) 358-4116

Attorney for Plaintiff
TRACY BOWES

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Tracy Bowes, an individual, | Case No.: |
| Plaintiff, | **COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF:** |
| v. | 1.  Violation of Cal. Civ. Code §2923.6(c) |
| Pennymac Loan Services, LLC, and DOES 1 TO 50, inclusive. | 2.  Violation of 12 C.F.R. 1024.41 |
| Defendants. | |
| | **DEMAND FOR JURY TRIAL** |

## PRELIMINARY ALLEGATIONS

1.      Plaintiff brings this Complaint for Defendant's violations of the Homeowner Bill of Rights and related causes of action. In the case at hand, Plaintiff faces the imminent loss of his home to foreclosure following Defendants' repeated violations of the Homeowner's Bill of Rights. The instant allegations arise from Defendant's ongoing review of Plaintiff's loan modification application. From the time Plaintiff contacted Defendant to pursue mortgage

1    assistance options including a loan modification, Defendant repeatedly assured him he was an

2    ideal candidate for a modification and continuously led him to believe he had completed all

3    necessary steps to receive a modification. On the morning of November 10, 2021, Plaintiff

4    contacted Defendant via telephone and, after providing thorough information including details

5    pertaining to his employment and income, Defendant's agent advised Plaintiff that he qualified to

6    be considered for assistance options and gave Plaintiff instructions he was to follow in order to be

7    considered for mortgage assistance. Plaintiff immediately got to work completing a Mortgage

8    Assistance Application, filling out all necessary forms and providing supporting documentation,

9    submitting all required materials on November 10, 2021, the very same day he was deemed

10    eligible and was directed to proceed with the application. Nonetheless, later that day, Defendant

11    caused a Notice of Trustee's Sale to be recorded against Plaintiff's home at 2:19 pm on

12    November 10, 2021, setting a sale date of December 13, 2021.

13    2.      Plaintiff diligently monitored the status of his application and timely provided additional

14    documentation when requested, all the while being reassured by Defendant on numerous

15    occasions that his application was complete, that there were no outstanding documents delaying

16    or impairing the review process, and reaffirming that he was a well-qualified candidate for a

17    modification. Since submitting the application and supporting documentation, Plaintiff followed

18    up frequently to ensure that all requirements had been satisfied and timely provided additional

19    documentation when requested by Defendant. Then, Defendant took an inexplicable and

20    unsupported position, informing Plaintiff that "there is prior partial claim balance outstanding that

21    requires payment," and demanded proof of payment in full in the form of an Official Partial

22    Claim Payoff Letter. The partial claim addressed by Defendant refers to a 2016 Partial Claim

23    Mortgage under the Federal Housing Administration-Home Affordable Modification Program

24    (described in detail, *infra*). Contrary to Defendant's assertions, FHA-HAMP Partial Claims such

25    as Plaintiff's 2016 Partial Claim, payment becomes due upon termination of the related first

26    mortgage- circumstances which clearly are not relevant to the instant matter; a modification of the

27    first mortgage, such as the one sought by Plaintiff in this case, is not a termination of the

28    mortgage and does not trigger payment obligation on the partial claim. Whether Defendant

1  willfully misstated Plaintiff's obligations in order to halt the loan modification process in favor of

2  proceeding with the Trustee's Sale, or whether Defendant made a genuine mistake by

3  inexplicably asserting that paying off the partial claim in was, in effect, an insurmountable pre-

4  condition to receiving a modification of the first mortgage, Defendant's position is utterly without

5  merit. Therefore, with an improper foreclosure looming, this lawsuit follows.

6  **JURISDICTION AND VENUE**

7  3.      This is an action asserting violations of California State Law and related federal law.

8  These claims arise out of the same controversy or sequence of events. Plaintiff is a homeowner

9  who brings this action as a result of Defendant's unlawful conduct concerning a residential

10  mortgage loan for the property located at 24645 Los Adornos, Yorba Linda, California 92887.

11  Venue is proper in this Court because a substantial part of the events giving rise to the claims

12  herein occurred in the City of Yorba Linda, which sits in Orange County and the real property

13  which is the subject of this action is situated in Orange County.  Therefore, the Central District of

14  California has jurisdiction over this action.

15  4.      Plaintiffs are ignorant of the true names and capacities of Defendants sued under fictitious

16  names Does 1-50, inclusive, and Plaintiffs will amend this Complaint to allege such names and

17  capacities as soon as they are ascertained. Plaintiffs are informed and believe and thereon allege

18  that each of said fictitiously named Defendants is responsible in some manner for the acts

19  complained of herein

20  5.      The Court has personal jurisdiction over the parties as all Defendants engage in business

21  within the State of California. Defendants' businesses involve providing mortgage loans and

22  related services to consumers in the State of California.

23  **PARTIES**

24  6.      At all times mentioned herein, Plaintiff Tracy Bowes was an adult resident of Orange

25  County, California. Plaintiff is the owner of the property located at 24645 Los Adornos, Yorba

26  Linda, California 92887.

27  7.      Pursuant to Civil Code 2920.5(c)(2), Plaintiff is a borrower under the Homeowner Bill of

28

3

Rights, as he has not surrendered the secured Property as part of a bankruptcy or contracted with an organization, person, or entity whose primary business is to advise people who have decided to leave their homes on how to extend the foreclosure process and avoid their contractual obligations to mortgagees or beneficiaries. Thus, at all times relevant, Plaintiff was a borrower within the meaning of the Homeowner Bill of Rights.

8.     At all times mentioned herein, Plaintiff is informed and believes and therefore alleges that Defendant PENNYMAC LOAN SERVICES, LLC (hereinafter "PENNYMAC") is a diversified financial marketing and/or services corporation engaged primarily in residential mortgage banking and/or related businesses. Defendant PENNYMAC is believed to be the current servicer of Plaintiff's loan and also acted as the servicer of Plaintiff's loan during the time periods alleged herein. Plaintiffs are informed and believe and thereon allege that PENNYMAC regularly conducts business in the State of California.

9.     Plaintiffs are ignorant of the true names and capacities of Defendants sued herein under fictitious names Does 1-50, inclusive, and Plaintiffs will amend this Complaint to allege such names and capacities as soon as they are ascertained or else present proof of same at the time of trial. Plaintiffs are informed and believe and thereon alleges that each of said fictitiously named Defendants is responsible in some manner for the acts complained of herein.

## AGENCY ALLEGATIONS

10.     Plaintiff is informed and believes and thereon alleges that at all times herein mentioned, that each of the Defendants were acting as the agent, servant, employee, partner, co-conspirator, and/or joint venture of one another, and were acting in concert with one another in all matters alleged, and each Defendant has inherited any and all violations or liability of their predecessors-in-interest.  Additionally, each Defendant has passed any and all liability to their successors-in-interest, and at all times were acting within the course and scope of such agency, employment, partnership, and/or concert of action.

## STATEMENT OF FACTS

11.     At all times mentioned herein, Plaintiff Tracy Bowes was the owner and occupant of the property located at 24645 Los Adornos, Yorba Linda, CA 92887 (the "Property").  The Property

4

is a single-family home that was owner occupied at all times and remains owner occupied as Plaintiff's primary residence.

12.     On or around August of 2009, Plaintiff purchased the Property with his significant other, Anna Dann, as joint tenants in common, obtaining a purchase money loan in the amount of $652,955.00 from US Bank, NA as the lender and beneficiary, secured by the Property.

13.     Plaintiff and Ms. Dann were married in February of 2013. A Deed of Trust was made on February 16, 2013 and recorded on March 1, 2013, between Plaintiff and Ms. Dann as Borrowers, and Paramount Residential Mortgage Group, Inc., as Lender, under which Borrowers owed Lender $634,347.00.  This is a first lien loan.  At all times mentioned herein, Plaintiff has occupied the property as his primary residence.

14.     On February 17, 2015, Mortgage Electronic Registration Systems, Inc. Acting Solely As A Nominee For Paramount Residential Mortgage Group, Inc., assigned and transferred to PENNYMAC all of its rights, title, and interest in the Deed of Trust that was recorded on March 1, 2013.

15.     Plaintiff and Ms. Dann separated in July of 2016, and shortly thereafter Ms. Dann withdrew funds from joint bank accounts and closed the accounts, no longer contributing to debt obligations including the PENNYMAC mortgage. Plaintiff incurred financial difficulties as a result of his separation and eventual divorce, leading him to struggle to keep up with payments on his own and without access to the funds previously shared.

16.     On March 18, 2018, a Notice of Default was recorded against the property with a reinstatement amount of $27,058.97, noting the default occurred as a result of the failure to pay installments that became due starting on September 1, 2017.

17.     Plaintiff entered into an agreement whereby Ms. Dann released her ownership interests in the Property and in January of 2020, he received a quitclaim deed and neither Ms. Dann nor her estate had any claim to the property thereafter. The quitclaim deed was subsequently provided to Defendant.

18.     The divorce was ultimately finalized in February of 2021. Plaintiff provided Defendant with the Entry of Judgment dissolving the marriage effective February 3, 2021.

19.    In an effort to find options to bring his account current, Plaintiff sought to explore available options and, to that end, he reached out to Defendant.

20.    Also on November 10, 2021, Plaintiff sent a comprehensive letter to Defendant, explaining his situation with respect to the loan status and history and detailing his intent and ability to work with Defendant to achieve a mutually agreeable solution whereby he would be able to reinstate his loan, continue making payments with a modification, and remain in his home.

21.    On the morning of November 10, 2021, Plaintiff contacted Defendant to discuss available options to resolve the mortgage delinquency and avoid foreclosure on him home. Defendant's agent obtained information from Plaintiff, asking a series of questions relating to Plaintiff's employment and income. Based on the information Plaintiff provided, the agent advised Plaintiff that he qualified to be considered for assistance options and gave Plaintiff instructions regarding how to access the Mortgage Assistance Application and other information. Plaintiff was also given instructions regarding how to upload the application to the PENNYMAC website portal to ensure it was properly submitted for review. That very same day, Plaintiff completed the application and uploaded the completed application and the requested supporting documents as instructed.

22.    Nonetheless, later on that same day, after Plaintiff had submitted the complete loan modification application, Defendant caused a Notice of Trustee's Sale to be recorded against Plaintiff's home at 2:19 pm on November 10, 2021, setting a sale date of December 13, 2021.

23.    After the review of Plaintiff's Mortgage Assistance Application had begun, the PENNYMAC website portal reflected that the Status of the Application was "Under Review". Plaintiff received a notification in the PENNYMAC website portal requesting two additional documents be provided by no later than November 25, 2021: a copy of the divorce judgment and an additional paystub from his current employer. Plaintiff timely submitted both documents prior to the deadline.

24.    On the afternoon of November 29, 2021, Plaintiff called PENNYMAC to request a status update. The PENNYMAC agent reviewed his account and inform him that there were no outstanding document requests and that all requirements had been satisfied. She further advised

that the Application for the modification was currently being reviewed by underwriting and that it may take seven to ten more days, at which he point he could expect to receive the offer for new loan terms. She further assured Plaintiff that all foreclosure activity had been suspended.

25.     On November 30, 2021, Defendant represented that the application was missing the Partial Claim Payoff Letter and gave him through December 30, 2021 to provide it. Given that there is no basis for this requirement nor would it be feasible or practical to require Plaintiff or any other borrow to pay off in full a partial claim that he has no obligation to pay off prior to receiving the requested loan modification, Plaintiff's position remains that the application is complete with all supporting documents having been provided, though should Defendant clarify what information or documentation they seek regarding the partial claim and are actually entitled to demand, Plaintiff will certainly provide such information or documentation prior to the December 30, 2021 deadline.

26.     On December 1, 2021, Plaintiff called PENNYMAC again requesting a status update. Over the course of a roughly forty-five minute phone call, Defendant took an inexplicable and unsupported position by informing Plaintiff that "there is prior partial claim balance outstanding that requires payment," and demanding Official Partial Claim Payoff Letter proof of payment in full of  a partial claim relating to a 2016 Partial Claim Mortgage in the amount of $171,109.79 from the Secretary of Housing and Urban Development ("HUD"), under the Federal Housing Administration-Home Affordable Modification Program, which by its express terms is a subordinate mortgage that does not require payment until termination of the related first mortgage. In this case, the date of repayment was set for August 1, 2046 or earlier if any of the following events occurred: Borrower has paid in full all amounts due under the primary Note and related mortgage, deed of trust or similar Security Instruments insured by the Secretary, or; The maturity date of the primary Note has been accelerated, or; The primary Note and related mortgage, deed of trust or similar Security Instrument are no longer insured by the Secretary, or; The property is not occupied by the purchaser as his or her principal residence. None of the specified conditions are applicable and therefore the demand for Plaintiff to pay off the Partial Claim in full prior to receiving the sought-after modification is nonsensical.

27.     Contrary to Defendant's assertions, FHA-HAMP Partial Claims such as Plaintiff's 2016

Partial Claim, payment becomes due upon termination of the related first mortgage-

circumstances which clearly are not relevant to the instant matter; a modification of the first

mortgage, such as the one sought by Plaintiff in this case, is not a termination of the mortgage and

does not trigger payment obligation on the partial claim.

28.     Perhaps due to the baselessness of the contention, Defendant refused to provide an

explanation or elaborate further when pressed by Plaintiff.

29.     Defendant has made numerous oral representations to Plaintiff that the Trustee's Sale will

not go forward on December 13, 2021, including on December 1, 2021 when Plaintiff was on the

phone with Defendant's agent who verified that the sale was not going forward by messaging

both underwriting and her supervisor who responded and advised that the foreclosure was on hold

and that Plaintiff had until December 30, 2021, to provide the requested documents.

30.     Given that Defendant has explicitly set forth December 30, 2021 as the deadline for the

provision of documents (which, absent further explanation or clarification from Defendant,

Plaintiff contends have already been submitted), Defendant must be held to honor its oral

representations to Plaintiff that the Trustee's Sale will not go forward on December 13, 2021

while the modification application is still being reviewed.

## **FIRST CAUSE OF ACTION**
### Violation of Cal. Civil Code § 2923.6(c)
### (Against all Defendants)

31.     Plaintiff incorporates all allegations of this complaint and re-alleges them as though they

were fully set forth herein.

32.     Defendants' conduct, as alleged above, constitutes violations of California Civil Code §

2923.6et seq.

33.     Pursuant to California Civil Code § 2923.6(c), "[I]f the borrower submits a complete

application for a first lien loan modification offered by, or through, the borrower's mortgage

servicer, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record

a notice of default or notice of sale, or conduct a trustee's sale, while the complete first lien loan

modification application is pending. A mortgage servicer, mortgagee, trustee, beneficiary, or

8

authorized agent shall not record a notice of default or notice of sale or conduct a trustee's sale until any of the following occurs: The mortgage servicer makes a written determination that the borrower is not eligible for a first lien loan modification, and any appeal period pursuant to subdivision (d) has expired.

34.     Plaintiff is informed and believes that Defendants violated Civil Code § 2923.6(c) by recording a Notice of Trustee's Sale for Plaintiff's Property while his complete loan modification application was under review.

35.     In the case at hand, Plaintiff faces the imminent loss of his property pursuant to a Notice of Trustee's Sale which was recorded in violation of Civil Code § 2923.6(c).

36.     On the morning of November 10, 2021, Plaintiff contacted Defendant to discuss available options to resolve the mortgage delinquency and avoid foreclosure on him home. Defendant's agent obtained information from Plaintiff, asking a series of questions relating to Plaintiff's employment and income. Based on the information Plaintiff provided, the agent advised Plaintiff that he qualified to be considered for assistance options and that very same day, Plaintiff completed the application and uploaded the completed application and the requested supporting documents as instructed.

37.     Specifically, Plaintiff's loan modification application was under review when, later in the day on November 10, 2021 Defendant caused a Notice of Trustee's Sale to be recorded against Plaintiff's home, setting a sale date of December 13, 2021. This was done prior to making a written determination that Plaintiff was not eligible for the modification. In fact, to date, no such determination has been made as Plaintiff's modification application is still being reviewed.

38.     Plaintiff submitted all subsequent documents within the timeframe demanded by Defendant and his application is still in the review process and least through December 30, 2021.

39.     Pursuant to Civil Code § 2924.12, Plaintiff is entitled to injunctive relief for the material violation until Defendant remedies its violation and attorney's fees.

///

///

///

## SECOND CAUSE OF ACTION
Violation of 12 C.F.R. 1024.41(b)(2) and 1024.41(g)
(Against all Defendants)

40.      Plaintiff incorporates all allegations of this complaint and re-alleges them as though they were fully set forth herein.

41.      Plaintiff's loan is a federally chartered loan pursuant to 12 C.F.R. 1024.41(g). Pursuant to 12 C.F.R. 1024.41(b)(2), if a servicer receives a loss mitigation application forty-five days or more before a foreclosure sale, a servicer shall: (B) notify the borrower in writing within 5 days after receiving the loss mitigation application that the servicer acknowledges receipt of the loss mitigation application and that the servicer has determined that the loss mitigation application is either complete or incomplete. If a loss mitigation application is incomplete, the notice shall state the additional documents and information the borrower must submit to make the loss mitigation application complete and the applicable date pursuant to paragraph (b)(2)(ii) of this section.

42.      In the case at hand, Plaintiff's loan modification application had already been received prior to the recording of a Notice of Trustee's Sale so given that no Trustee's Sale was scheduled when the application was received, Defendant's did receive the loss mitigation application more than 45 days before a foreclosure sale.

43.      Each time Plaintiff spoke with Defendant from the November 10, 2021 when he submitted the application, to the November 20, 2021 conversation, to the December 1, 2021 conversation, and the December 6, 2021 conversation, he was advised repeatedly that he his application was under review and that the Trustee's Sale was on hold. On each of these calls Plaintiff was advised the he had until December 30, 2021 to submit any outstanding documents and that the sale would not occur before that date. While, as discussed above, Plaintiff remains uncertain as to what exactly is outstanding given that the there is no basis or authority to support Defendant's demand for a Partial Loan Payoff, the fact of the matter is that Plaintiff has submitted the vast majority of requested documents and narrowed the scope of the what remains to be submitted such that at this point there is essentially one lingering issue that simply needs to be clarified by Defendants so

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

Plaintiff can determine what is actually needed and submit any appropriate additional documentation.

44.       Pursuant to 12 C.F.R. 1024.41(g), If a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process but more than thirty-seven days before a foreclosure sale, a servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale, unless the servicer has sent the borrower a notice pursuant to paragraph (c)(1)(ii) of this section that the borrower is not eligible for any loss mitigation option and the appeal process in paragraph (h) of this section is not applicable, the borrower has not requested an appeal within the applicable time period for requesting an appeal, or the borrower's appeal has been denied; A borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. 2605(f)).

45.       Plaintiff's mortgage loan is a federally related mortgage loan.

46.       In the case at hand, Plaintiff's loan modification application was submitted after the first required notice or filing, as the Notice of Default was recorded on March 18, 2018. Plaintiff's loan modification application was submitted more than 37 days before a foreclosure sale because no Trustee's Sale was scheduled when the application was received. As such, Defendant did receive the loss mitigation application more than 37 days before a foreclosure sale.

47.       As such, Plaintiff's application was submitted and under review when Defendant caused to be recorded a Notice of Trustee's Sale for Plaintiff's Property, scheduling a foreclosure sale of Plaintiff's home, without having made a determination on Plaintiff's modification application, in violation of 12 C.F.R. 1024.41(g). Plaintiff is informed and believes that at this time, his loan modification application is complete and under review. Defendant should not be permitted to proceed with the Trustee's Sale of Plaintiff's home on December 13, 2021, without having made a determination on Plaintiff's modification application, in violation of 12 C.F.R. 1024.41(g).

48.       Pursuant to 12 U.S.C. 2605(f), whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the sum of any actual damages to the borrower as a result of the failure and any additional damages, as the court may allow, in the case

of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2000.00.

### DEMAND FOR JURY TRIAL AND PRAYER FOR DAMAGES

WHEREFORE, Plaintiff Tracy Bowes demands a trial by jury. Plaintiff prays for judgment and order against Defendants, as follows:

1. That judgment is entered in Plaintiff favor and against Defendants, and each of them;

2. For an order requiring Defendants to show cause, if they have any, why they should not be

3. enjoined as set forth below, during the pendency of the action;

4. For a temporary restraining order, preliminary and permanent injunction preventing

5. Defendants, or anyone acting in concert with them, from collecting on the subject loan and from causing the Property to be sold, assigned, transferred to a third-party, or taken by anyone or entity;

6. For compensatory damages, attorneys' fees, and costs according to proof at trial;

7. For declaratory relief;

8. For injunctive relief;

9. For such other and further relief as the Court may deem just and proper.

DATED: December 9, 2021                      Respectfully submitted,

                                             SHAPERO LAW FIRM

                                             /s/ Sarah Shapero
                                             Sarah Shapero, Esq.
                                             Stephanie Silverman Warden, Esq.
                                             Attorney for Plaintiff